# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 2:21CR00001-005 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **GERMAN HERNANDEZ,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendant. | ) | |

*Daniel J. Murphy*, Assistant United States Attorney, Abingdon, Virginia, for United States; *Randy V. Cargill*, Assistant Federal Public Defender, Roanoke, Virginia, for Defendant.

In this criminal case, the defendant, relying on *Bruton v. United States*, 391 U.S. 123 (1968), has filed a motion to sever his trial from that of his three codefendants charged in this case. In the alternative, the defendant moves to bar the admission of incriminating statements made by the codefendants. For the reasons stated, I will grant in part and deny in part the defendant's motion.

I.

The defendant, German Hernandez, is charged with conspiring to commit murder, in violation of 18 U.S.C. § 1117, and attempting to commit murder, in violation of 18 U.S.C. §§ 2, 1113. The defendant is an inmate at a federal prison located in this judicial district and the alleged victim was another inmate at the prison. I previously recounted the facts of this case in a decision denying a motion

to suppress. *United States v. Chavez*, No. 2:21CR00001, 2021 WL 5298917 (W.D. Va. Nov. 15, 2021). I will briefly recount the facts as relevant to the present motion.

On January 15, 2020, Hernandez and four other codefendants charged in the Indictment — Moris Flores, Carlos Almonte, Julio Chavez, and Angel Guevara — were allegedly involved in the stabbing of another inmate that was partially captured on the prison's security video system. The video recording will purportedly show that Flores and Guevara entered the prison cell of the victim, Anthony Zaragoza, and closed the door. Shortly thereafter, all three inmates fell through the cell door, which Zaragoza had pushed open as he struggled to fend off Flores and Guevara, who were repeatedly stabbing him. The other defendants, Almonte, Chavez, and Hernandez, were seen moving towards the cell door but remained outside; Hernandez was standing furthest from the door. As the attack spilled out of the cell into the common area, other inmates rushed to the scene, appearing to aid Zaragoza. Hernandez is shown fighting with those inmates, but at no point is he directly involved with Zaragoza.

Special Investigative Services (SIS) Agent Jamie Canfield suspected that the incident was gang related. All of the defendants are members of Mara Salvatrucha 13, also known as MS-13, and the victim is a member of the Mexican Mafia, both prison gangs. Shortly after the incident, a larger fight broke out throughout the facility between MS-13 and the Sureños, another prison gang that pledges allegiance

to the Mexican Mafia. MS-13 usually pledges allegiance to the Mexican Mafia, and the Sureños are considered foot soldiers of the Mexican Mafia.

All MS-13 inmates were then moved to a single housing unit within the facility, where they were questioned by Agent Canfield and other SIS staff. As I previously held, the primary purpose of the questioning was to collect information about the gang dispute and whether the inmates could safely interact moving forward, although another purpose was to investigate the crime for possible prosecution. During the investigation, Canfield interviewed 36 inmates in total. At issue are statements made by Almonte, Chavez, and Guevara about the stabbing incident, as reflected in Agent Canfield's report.[1] The defendants are not expected to testify at trial. The government has advised defense counsel that it intends to introduce these statements at trial through the testimony of Agent Canfield.

The specific statements are as follows:

> Inmate Guevara referenced other incidents at USP Hazelton and USP Big Sandy between the MS-13 and Mexican Mafia/Surenos. Guevara also stated there is a faction of Mexican Mafia members including Zaragoza, Anthony, Reg. No. 18090-112 (Mexican Mafia, victim), which continue to spread rumors that MS-13 were to be held responsible for the death of Martinez, Ricardo, Reg. No. 31578-198 "Gato" (Mexican Mafia, deceased), at USP Canaan on July 31, 2019

---

[1] One of the codefendants, Moris Flores, has pled guilty. His Plea Agreement requires that he fully cooperate with the government. The government likely will call Flores as a witness at the trial of the remaining defendants. However, because Flores will be subject to cross-examination, Hernandez is not challenging the admissibility of his statements.

(CAA-19-0234) although the suspect in that case is not affiliated with the MS-13.  Inmate Guevara stated Zaragoza asked for a list of MS-13 members with life sentences that he could order to assault a staff member if he (Zaragoza) would be taken to Special Housing or "messed with by staff" Inmate Guevara stated he refused to provide the names and stated a Sureno could do any assault as well as an MS-13 member. Inmates [sic] Guevara echoed inmate Flores' statements of disrespect towards MS-13 from Zaragoza.

. . . .

Guevara, Angel, Reg. No. 12552-111, stated, "Just wait, we aren't the only ones that will turn away from the Mexican Mafia. Florencia-13 will do it soon too."  When asked specifically, he stated that MS-13 no longer wanted to associate with the Mexican Mafia or Sureno inmates and they wish to stand as their own group.  He stated they would walk any yard regardless of who else was on the yard but they (MS) would strike first regardless of numbers or the consequences.  Additionally, he did not feel there was any way to fix this issue nor did he express any desire to fix the issues between the groups.

. . . .

Chavez, Julio, Reg. No. 15920-055, stated, "We have tried to fix the disrespect issues from Zaragoza but no one wanted to hear it and didn't want to change, so we fixed it.  We have crossed a line that can't go back.  We know what we did, this is how it needed to be." Inmate Chavez was asked if it were any other Mexican Mafia inmate in the unit would they had [sic] been assaulted and he replied, "Any of them that got in the way."  When asked specifically, he stated that MS-13 no longer wanted to associate with the Mexican Mafia or Sureno inmates and they wish to stand as their own group.  He stated they would walk any yard regardless of who else was on the yard but they (MS) would strike first regardless of numbers or the consequences.  Additionally, he did not feel there was any way to fix this issue nor did he express any desire to fix the issues between the groups.

. . . .

      Almonte, Carlos, Reg. No. 30129-058, stated, "We live and die MS, this is our family. Zaragoza disrespected us as men and he is supposed to be above that. We lose family over MS, so we aren't being punked." Inmate Almonte was asked [i]f it were just an issue with Zaragoza or if another Mexican Mafia member such as Trigg would have been involved would the incident happened the same way. Almonte stated, "If Trigg would have been there and gotten in the way then he would have gotten it too. The main issue was Zaragoza's disrespect but we were going to do what we were going to do." When asked specifically, he stated that MS-13 no longer wanted to associate with the Mexican Mafia or Sureno inmates and they wish to stand as their own group. He stated they would walk any yard regardless of who else was on the yard but they (MS) would strike first regardless of numbers or the consequences. Additionally, he did not feel there was any way to fix this issue nor did he express any desire to fix the issues between the groups.

Gov't Resp. Opp'n Ex. 1 at 1–3, ECF No. 127-1.

The defendant argues that the introduction of these statements at the joint trial violates his Sixth Amendment right to confront witnesses against him, requiring severance under *Bruton*. He further contends that redaction of the statements would be insufficient. Alternatively, the defendant moves to exclude the codefendants' statements from the joint trial.

In response, the government argues that neither severance nor exclusion of the statements is warranted, as the statements are not facially incriminating. Specifically, the government contends that the statements include only generic pronouns, such as "we" or "they," which do not directly or implicitly reference the defendant, and it is only when linked with other evidence in the case that the statements become incriminating.

The motion has been fully briefed by the parties and is ripe for decision.

II.

The Sixth Amendment states, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. To guarantee protection of this right, it is well-settled law that a non-testifying codefendant's statement that refers to and directly incriminates another defendant is barred from being introduced at their joint trial, even if the jury is instructed to consider the statement only against the declarant. *Bruton*, 391 U.S. at 135–37. The Court determined that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135.

In subsequent cases, the Court clarified that the *Bruton* rule does not apply to all incriminating codefendant statements. First, in *Richardson v. Marsh*, the Court held the Sixth Amendment's Confrontation Clause is not implicated so long as the codefendant's statement "is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. 200, 211 (1987). This remains true even if the statement inferentially incriminates the defendant "when linked with evidence later introduced at trial." *Id.* at 208. In other words, the *Bruton* rule applies only to statements that are "facially incriminating." *Id.* at 211.

Later, in *Gray v. Maryland*, the Court held that a codefendant statement is still facially, not just inferentially, incriminating, if the government "replace[s] a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notif[ies] the jury that a name has been deleted." 523 U.S. 185, 195 (1998). Thus, whether the codefendant's statements violate the Sixth Amendment "depend[s] in significant part upon the *kind* of, not the simple *fact* of, inference." *Id.* at 196.

In that case, after being asked who beat up the victim, the codefendant's redacted confession stated: "Me, , and a few other guys." *Id.* at 192. At trial, the government's witness read the confession to the jury, saying "deleted" or "deletion" where the blank spaces appeared. *Id.* The Court concluded the statement still offended *Bruton*, reasoning that unlike in *Richardson*, the inference "involve[d] statements that, despite redaction, obviously refer[red] directly to someone, often obviously the defendant, and which involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.* at 196. The redacted confession's accusation was in essence "'more vivid than inferential incrimination.'" *Id.* (quoting *Bruton*, 481 U.S. at 208).

The Court considered whether the statement, if redacted differently, would have passed constitutional muster, for instance, if the statement had said "'Me and a few other guys,'" instead of "'Me, deleted, deleted, and a few other guys.'" *Id.* It is this remaining issue that has puzzled the lower courts, and to which I must address

in deciding this motion: whether, and in what contexts, the use of neutral terms and generic pronouns still implicates *Bruton* and its progeny. The rule is straightforward: a non-testifying codefendant's statement does not violate the confrontation clause of the Sixth Amendment unless it is facially, not inferentially, incriminating, even if the defendant's name is redacted. Finding the line between permissible and impermissible inferences requires more of an explanation.

The Fourth Circuit has held where the codefendant's statement is altered by replacing the defendant's name with a generic pronoun, or the neutral phrase "another person," or "another individual," it does not offend *Bruton* so long as it reasonably "referred generally and without facial incrimination to some number of individuals who could, or could not, be the other defendants." *United States v. Min*, 704 F.3d 314, 321 (4th Cir. 2013). In other words, the statements must not "implicate any one defendant in particular," or "leave the jury to fill in any obvious blanks." *Id.* The redaction of a codefendant's statement is permissible so long as it "does not distort the statements' meaning." *United States v. Lighty*, 616 F.3d 321, 350 (4th Cir. 2010) (internal quotation marks and citation omitted).

### III.

Applying this rule, I must consider the language of the statements as well as the surrounding context. After reviewing the codefendants' statements in light of other evidence in the case, and considering the arguments of counsel, I am persuaded

that at least some of the codefendants' statements are facially incriminating. None of the statements implicate Hernandez by name. They already use generic pronouns, such as "we" and "they," so the government has not needed to redact the statements. But I find that, at least as to parts of the statements, the pronouns obviously refer to the defendants, including Hernandez, and thus are "more vivid than inferential incrimination." *Richardson*, 523 U.S. at 208. But I disagree with the defendant that severance is the only remedy here. The partial exclusion or redaction of the statements would be sufficient and would not impermissibly change their meaning. Accordingly, I will consider each statement, and identify the portions that must be excluded from trial.

### A. Guevara's Statement.

First, Guevara stated: "Just wait, *we aren't the only ones* that will turn away from the Mexican Mafia. Florencia-13 will do it soon too." Gov't Resp. Opp'n Ex. 1 at 2, ECF No. 127-1 (emphasis added). This statement does not refer directly or implicitly to Hernandez or the stabbing incident in particular. The "we" could reasonably be inferred to include all MS-13 inmates, either at USP Lee or elsewhere in the Bureau of Prisons. In other words, the statement could be referring to individuals who are, or are not, defendants in the case. *Min*, 704 F.3d at 321. It is only when considered with other evidence in the case, namely that there was a splintering of allegiances between the MS-13 and Mexican Mafia and the video

recording that put Hernandez at the scene, does the statement become incriminating, as it explains the motive for the attack.

Second, Canfield recounts that Guevara stated: "*they would walk any yard regardless of who else was on the yard but they (MS) would strike first regardless of numbers.*" Gov't Resp. Opp'n Ex. 1 at 2, ECF No. 127-1 (emphasis added). Similarly, the "they" could reasonably be inferred to reference all the MS-13 members, not just Hernandez. It also does not directly reference the stabbing incident. Because Guevara's statements do not facially implicate the defendant, they do not require exclusion.

### B. Chavez's Statement.

First, Chavez stated: "*We have tried to fix the disrespect issues from Zaragoza but no one wanted to hear it and didn't want to change so we fixed it. We have crossed a line that can't go back. We know what we did*, this is how it needed to be." *Id.* (emphasis added). On its face, this statement "powerfully incriminate[es]" the defendant. *Bruton*, 391 U.S. at 135. Chavez explicitly refers to the victim by name, expressing animosity towards him. The statement also relates directly to the stabbing incident. It is reasonable to infer then that the "we" refers specifically to the codefendants, including Hernandez, and not generally to any number of individuals, who may or may not be charged.

I disagree with the government that the "we" in this context is simply a benign pronoun. This may be true in isolation. But its use in the sentence, along with "Zaragoza" and the mentioning of a violent or intentional act, like "fixed it," renders the entirety of the statement facially incriminating. In *Gray*, the Court expressly carved out a narrow exception from *Richardson*'s broader rule describing which statements are facially incriminating. A pronoun can be more than inferentially incriminating if it obviously refers to a particular individual or group of individuals.

The facts of this case present such an exception. Even if this statement were the first item introduced at trial, any reasonable juror who wonders who the "we" refers to could simply look over to Hernandez, and other codefendants, "sitting at counsel table[,] to find what will seem the obvious answer." *Gray*, 523 U.S. at 193. To be sure, the incriminating inference will become stronger when considered with other evidence at trial, namely the video, but that is true in every case. It does not change the fact that the statement is sufficiently incriminating on its face to warrant exclusion. Accordingly, because this portion of his statement is barred by *Bruton*, it must be fully redacted from the rest of his statement.[2]

Second, in response to Agent Canfield's question, "[I]f it were any other Mexican Mafia inmate in the unit would they have been assaulted," Chavez stated,

---

[2] I agree with the defendant that altering the statements from "we" to the singular "I" would change the meaning of the statement. Mot. Sever 13, ECF No. 125. However, excluding parts of the statement in their entirety would not change the meaning.

-11-

"Any of them that got in the way." Gov't Resp. Opp'n Ex. 1 at 2, ECF No. 127-1. This statement does not facially implicate the defendant, only the declarant. Therefore, this portion of the statement is admissible.

Finally, Agent Canfield recounts that Chavez stated that "*they would walk any yard* regardless of who else was on the yard but *they (MS) would strike* first regardless of numbers." *Id.* (emphasis added). This is the same statement attributed to Guevara. As explained above, "they" could reasonably be inferred to reference all of the MS-13 members. I find that this portion of his statement is admissible.

### C. Almonte's Statement.

First, Almonte stated: "*We* live and die MS, this is our family. Zaragoza *disrespected us as men* and he is supposed to be above that. We lose family over MS, so we aren't being punked." *Id*. at 3 (emphasis added). On its face, this statement is partially incriminating of the defendant. The portions discussing MS-13 are generalized enough that a reasonable inference is "we" could include all MS-13 members, not merely the codefendants. But in the next sentence, the explicit reference to the victim creates a much stronger inference that "us" refers to these codefendants in particular. This is the type of impermissible inference that *Gray* prohibits. Accordingly, the second sentence — "Zaragoza disrespected us as men and he is supposed to be above that" — must be excluded. The remainder is admissible.

Second, in response to Agent Canfield's question, "[I]f it were just an issue with Zaragoza or if another Mexican Mafia member such as Trigg would have been involved would the incident happened the same way," and Almonte replied, "If Trigg would have been there and gotten in the way then he would have gotten it too. The main issue was Zaragoza's disrespect but *we were going to do* what *we were going to do*." *Id*. (emphasis added). The first part of the statement does not facially implicate the defendant, only the declarant, as there is no reference to anyone else. However, the second part of the statement is different, as "we" could implicate the defendant. A nearly identical statement was attributed to Chavez, which I determined did facially incriminate Hernandez, as explained above. For those same reasons, this portion of the statement must be excluded.

Finally, Agent Canfield recounts that Almonte also stated: "*they would walk any yard* regardless of who else was on the yard but *they (MS) would strike* first regardless of numbers." *Id.* (emphasis added). This is the same statement attributed to Guevara and Chavez. "[T]hey" could reasonably be inferred to reference all the MS-13, as explained above. This part of the statement is admissible.

IV.

For these foregoing reasons, it is **ORDERED** that the Motion to Sever, ECF No. 125, is DENIED. I will allow the admission of the codefendants' statements to Agent Canfield if redacted as indicated herein. If introduced by the government, and

if requested by the defendant, I will instruct the jury that any such statement may be considered only as to the individual declarant.

          ENTER:  March 1, 2022

          /s/ JAMES P. JONES
          Senior United States District Judge